E-FILED
Friday, 18 February, 2011 03:39:15 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-cr-30101 |
| | ) | |
| DEMETRIUS L. HOLLOMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

On January 27, 2011, the Court held a sentencing hearing in this case.

At the hearing, the Court ruled that the Fair Sentencing Act of 2010, Pub. L. No. 111-220, applied to this Defendant.

This opinion explains the Court's rationale for its holding.

### I.

On November 3, 2009, a federal grand jury returned a single-count indictment against Defendant Holloman, charging him with possession

with intent to distribute over 5 grams of crack cocaine, in violation of 21 U.S.C. § 841(a) and 841(b)(1)(B).  The indictment indicated that the offense conduct occurred on February 19, 2009.

On August 3, 2010, President Barack Obama signed the Fair Sentencing Act of 2010 ("FSA").  The FSA made a number of changes to drug laws, but importantly for our case, it removed the mandatory minimum sentences for certain crack cocaine offenses.

On August 11, 2010, the Government filed a notice under 21 § U.S.C. 851, indicating that a prior felony drug conviction could subject Defendant Holloman to an enhanced statutory mandatory minimum sentence.

On August 16, 2010, Defendant Holloman entered an open plea of guilty to the one-count indictment before U.S. Magistrate Judge Byron G. Cudmore.  The Court accepted the plea of guilty on September 7, 2010.

The Probation Officer prepared the Presentence Investigation Report (PSR).  In the PSR, the Probation Officer calculated a sentencing

range sentence based upon the total offense level and criminal history category. In calculating this sentencing range, the Probation Officer relied upon the Sentencing Guidelines Manual (Nov. 1, 2010) as amended by the Supplement to the 2010 Guidelines Manual. The Probation Officer arrived at a sentencing range of 46 to 57 months.

However, the Probation Officer found that the statutory mandatory minimum of 120 months applied in this case.

The Defendant filed an objection to that portion of the PSR, arguing that the FSA does indeed apply. The Probation Officer and the Government maintained that the FSA does not apply.

## II.

### A.

The U.S. Court of Appeals for the Seventh Circuit has ruled that the FSA cannot apply retroactively. *United States v. Bell*, 624 F.3d 803, 814-815 (7th Cir. 2010).

In *Bell*, the defendant was convicted by a jury of distributing cocaine base and was sentenced to 292 months imprisonment. Mr. Bell

appealed several evidentiary rulings made by the district court and comments made by the prosecutor. *See id.* at 805. The President signed the FSA into law after oral argument had taken place. Then, Mr. Bell, "who had not previously challenged any aspect of his sentence, filed a pro se motion for leave to file a supplemental brief regarding the application of the FSA to his case." *Id.* at 814.

> The Court of Appeals stated the following regarding retroactivity:
>
> The general savings statute, 1 U.S.C. § 109, provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act so shall expressly provide...." "[T]he saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 661, 94 S. Ct. 2532, 41 L. Ed. 2d 383 (1974). We have also recognized that the application of the savings statute extends beyond mere repeals, and reaches amendments to criminal statutes as well, *see United States v. Stillwell*, 854 F.2d 1045, 1047-48 (7th Cir. 1988), unless the new laws by its terms applies retroactively. So if the savings statute applies to the FSA, the FSA in turn cannot operate retroactively to reduce Bell's sentence.

*Bell*, 624 F.3d at 814.

The Court of Appeals then held: "Like our sister circuits that have considered this issue, we conclude that the savings statute operates to bar the retroactive application of the FSA." *Id.* (citations omitted).

The case at bar, however, presents a markedly different set of facts than those at play in *Bell*. Defendant Holloman pled guilty <u>after</u> the FSA was enacted, and was sentenced <u>after</u> the Sentencing Guidelines had been amended to reflect the changes made by the FSA. In *Bell*, the Defendant was convicted and sentenced before the FSA was enacted.

### B.

The FSA provides that it applies to defendants sentenced on or after November 1, 2010, by directing the Sentencing Commission to adjust the Sentencing Guidelines within 90 days to reflect the changes made in the FSA:

> The United States Sentencing Commission shall---
> (1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act, in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987 (28 U.S.C. 994 note), as though the authority under that act had not expired; and
> (2) pursuant to the emergency authority provided under paragraph (1), make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.

124 Stat. 2372, 2374 (2010).

In September 2010, the Sentencing Commission began distributing

the Guidelines Manual, effective November 1, 2010, which did not contain the emergency amendments based upon the FSA. Each copy of the Guidelines Manual arrived with a letter from Judge William K. Sessions III, Chair of the Sentencing Commission. The letter stated:

> Please note, however, that the Fair Sentencing Act of 2010, Pub. L. No. 111-220, directs the Commission to promulgate an emergency, temporary amendment to the *Guidelines Manual* in response to that Act. The Commission anticipates promulgating such an amendment with an effective date of November 1, 2010. A supplement to this 2010 *Guidelines Manual*, containing the amendment and the reasons for the amendment, will be made available on the Commission's web site, www.ussc.gov, no later than November 1, 2010, and distributed to all recipients of the *Guidelines Manual* as soon as possible. That supplement, used in conjunction with this 2010 *Guidelines Manual*, will constitute the operative *Manual* effective November 1, 2010.

Letter from Hon. William K. Sessions III, Chair, Sentencing Commission, to all recipients of the Guidelines Manual (September 15, 2010).

The Sentencing Commission complied with the directive issued by Congress, and issued the Supplement to the 2010 Guidelines Manual. There is a box on the bottom of the front cover of the Supplement which contains the following text:

> This supplement incorporates the emergency amendments to § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking

> (Including Possession with Intent to Commit these Offenses); Attempt or Conspiracy) . . . The amended guidelines, as set forth in this document, supercede the versions set forth in the 2010 <u>Guidelines Manual</u> (green with white lettering) and, together with the rest of the 2010 <u>Guidelines Manual</u>, constitute the operative <u>Guidelines Manual</u> effective November 1, 2010.

Supplement to the 2010 Guidelines Manual, Front Cover (November 1, 2010).

District courts use the version of the Sentencing Guidelines Manual in force on the date of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A)(ii); *United States v. Douglas,* --- F. Supp. 2d ---, 2010 WL 4260221, at *5 (D. Me. 2010) ("during the past two decades of the Guidelines' existence, whenever the Commission has adopted Guideline amendments, those amendments have applied to all defendants sentenced thereafter, regardless of when the crime was committed.").

From the plain text of the FSA, it is apparent that Congress intended the FSA to apply to defendants sentenced after the promulgation of the amendment to the Guidelines Manual. The general federal savings statute, 1 U.S.C. § 109, does not save the former laws, because the FSA plainly provides that it applies to Defendants sentenced

after November 1, 2010. Therefore, the Court holds that the Fair Sentencing Act of 2010 applies to criminal defendants sentenced on or after November 1, 2010.

## C.

The Government has endeavored to characterize the application of the FSA to Defendant Holloman as <u>retroactive</u>. On the other hand, the Defendant has characterized the application of the FSA as <u>prospective</u>.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (citation omitted).

In his concurring opinion in *Landgraf*, Justice Scalia explained that a court must look to the relevant event that is regulated by the law:

> The critical issue, I think, is . . . what is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs after the effective date of the statute is covered. Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a different purpose and therefore different relevant retroactivity event.

*Landgraf*, 511 U.S. at 291 (Scalia, J. concurring).

Here, the purpose of the FSA is to regulate sentencing, not to "regulate primary conduct." The Defendant was sentenced after the FSA was enacted and the Sentencing Guidelines were amended.

Furthermore, "it is clear that drug type and quantity are not elements of the offense," but rather are sentencing factors. *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002). The same is true of previous convictions. *See Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998).

When the FSA changed the applicability of mandatory minimum sentences, it did not alter the penalty for committing the offense. A mandatory minimum merely cabins the discretion of the sentencing judge. The Seventh Circuit has explained this issue as follows:

> [A] statute that sets a mandatory minimum neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range available to it.

*United States v. Krieger*, 628 F.3d 857, 863 (7th Cir. 2010) (quotation marks omitted).

Therefore, the relevant retroactivity event is the sentencing date,

not the date the offense was committed, because the application of a mandatory minimum is a sentencing factor, not an element of the offense. Accordingly, the application of the FSA is the <u>prospective</u> application of current law, not a <u>retroactive</u> exercise.

### D.

Applying the FSA to Defendant Holloman, and similarly situated defendants, is fair and equitable. The previous sentencing regime had a disproportionate impact on young black males, as has been detailed in the legislative history of the FSA and cases discussing its application. *See, e.g., United States v. Gillam*, --- F. Supp. 2d ---, 2010 WL 4906283, at *5-*6 (W.D. Mich. 2010).

Perhaps the best assessment of inequitable nature of the previous sentencing regime has been provided by Attorney General Eric Holder:

> [T]he disparity as originally intended -- originally proposed and enacted I think was well intentioned. I don't think anybody had any negative motives.
>
> But as we have seen how it has played out and I think in the graphic demonstration that you have made and also when one looks at the racial implications of the crack-powder disparity, it has [bred] disrespect for our criminal justice system, it has made the job of those of us from law enforcement more difficult. And I think it is time for us to make the determination that is consistent with what the science tells us,

> consistent with what law enforcement officials on the state and local levels have told us; certainly something that I have observed as a judge here in Washington, D.C.
>
> It is time to [do] away with that disparity. That will have I think an immediate impact on how people -- not only people of color but people generally look at our criminal justice system and it will be a very positive thing for those of us in law enforcement.

Oversight of the Justice Department, Hearing Before the Senate Comm. on the Judiciary, 111th Cong., 2009 WL 1680840 (F.D.C.H.) (June 17, 2009) (testimony of Eric H. Holder, Jr., Att'y Gen. of the United States).

### III.

*Ergo*, the Court adopts the Defendant's position regarding the application of the Fair Sentencing Act of 2010. The Court holds that the Fair Sentencing Act of 2010 applies to all defendants sentenced on or after November 1, 2010.

    IT IS SO ORDERED.

    ENTER: February 18, 2011

    FOR THE COURT:                                      s/Richard Mills
                                                                               U.S. District Judge